```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


_____
                              )
ROBERT B. MENAPACE,           )
               Plaintiff,     )
                              )
v.                            )    Civil Action
                              )    No. 14-14045-PBS
CAROLYN W. COLVIN,            )
Commissioner of               )
Social Security,              )
               Defendant.     )
_____)
```

**MEMORANDUM AND ORDER**

January 27, 2016

Saris, C.J.

**INTRODUCTION**

Plaintiff Robert Menapace has moved to reverse the final decision of the Commissioner of the Social Security Administration (Commissioner) denying his request to amend his earnings record to include self-employment income for 2004. The Commissioner has moved to affirm her ruling that Menapace cannot rely on his tax return to establish self-employment income because it was not timely filed. For the reasons set forth below, the Court **DENIES** Plaintiff's motion to reverse the Commissioner's decision (Docket No. 21), and **ALLOWS** Defendant's motion to affirm the Commissioner's decision (Docket No. 26).

1

**FACTUAL BACKGROUND**

In 2004, Menapace worked as an independent contractor and earned self-employment income. On April 15, 2005, Menapace filed a Form 4868, "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return," and included a check for $5,500 to pay his estimated 2004 tax liability. (R. 27). Menapace did not file a Form 1040 tax return at that time.

On March 17, 2008, the Internal Revenue Service (IRS) notified Menapace that it had no record of receiving a tax return from him for the 2004 tax year. The IRS notice stated that Menapace had "three years from the due date of the return, plus extensions" to file his tax return. (R. 28). Menapace filed his 2004 tax return on August 15, 2008, within the IRS deadline.[1] After filing his tax return, he received a refund of $2,648.00.

On February 10, 2009, Menapace received a statement from the Social Security Administration (SSA) stating that his earnings record did not include self-employment income for 2004. A claimant's earnings record is used to determine his eligibility for Social Security benefits, and, if eligible, the amount of the monthly payment. Because Menapace had paid his taxes and filed a tax return with the IRS for the 2004 tax year,

---

[1] The Appeals Council refers to an "amended tax return" filed on August 15, 2008, but the tax return in the record is not an amended return.

he disputed the SSA's exclusion of his 2004 self-employment income.

## PROCEDURAL HISTORY

After reviewing his earnings record, the SSA notified Menapace on February 19, 2012, that his SSA earnings record would not include self-employment income for 2004 because the claimant failed to file his tax return within the prescribed period under 42 U.S.C. § 405(c), which ended on April 15, 2008. Menapace requested a reconsideration, and the SSA affirmed its decision on September 25, 2012. The SSA concluded that, although Menapace had filed a tax return for 2004, he had filed the return after the three years, three months, and fifteen days statutory time limitation under 42 U.S.C. § 405(c). Because none of the listed exceptions applied that would have allowed Menapace to rely on his 2004 tax return, the SSA would not include any 2004 self-employment income in his earnings record.

Menapace requested a hearing before an Administrative Law Judge (ALJ), who held the hearing on December 6, 2013, in Boston, Massachusetts. The ALJ reversed the SSA's determination on the ground that Menapace had established "good cause" under 42 U.S.C. § 403(l) for the untimely filing of his tax return because the "claimant had good cause to believe if he filed his return in a timely fashion as per the IRS guideline after making timely payments for the tax year that he would be credited for

3

his self-employment by the administration." (R. 15). The ALJ also pointed out that the claimant paid his taxes in a timely manner and had "no notice that his return had to be filed sooner than required by the IRS in order to be credited by the Social Security Administration." (R. 15).

The SSA requested a review of the ALJ's decision, and on June 20, 2014, the Social Security Appeals Council reversed the ALJ's order. The Appeals Council found that the ALJ based his decision on incorrect legal principles because the "good cause" exception was not relevant to the correction of an individual's earnings record under 42 U.S.C. § 405(c). After a request for further review, the Appeals Council affirmed its decision and denied the inclusion of self-employment income for 2004 in Menapace's earnings record. The decision of the Appeals Council is the final decision of the Commissioner.

Menapace appealed to this Court under 42 U.S.C. § 405(g), which permits judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which [the plaintiff] was a party, irrespective of the amount in controversy."

**DISCUSSION**

I. <u>Appeals Council Decision</u>

   A. <u>Standard of Review</u>

   This Court's authority to review the Commissioner's decision "is limited to determining whether the [Commissioner] deployed the proper legal standards and found facts upon the proper quantum of evidence." <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999). "The findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." <u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u> at 401. Courts must uphold the Commissioner's determination "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Rodriguez Pagan v. Sec'y of Health & Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987). "Questions of law are reviewed de novo." <u>Seavey v. Barnhart</u>, 276 F.3d 1, 9 (1st Cir. 2001).

   B. <u>Good Cause Exception</u>

   The Commissioner argues that the Appeals Council correctly reversed the ALJ's ruling because the ALJ relied on an inapplicable "good cause" exception in deciding to allow Menapace to rely on his untimely filed tax return to establish

his self-employment earnings. Menapace responds that his August 2008 tax return, which was timely filed within the time period permitted by the IRS extension, provided "good cause" for the untimely filing under 42 U.S.C. § 403(l).

The complex statutory scheme expressly distinguishes in several ways between wage income and self-employment income. See Shore v. Califano, 589 F.2d 1232, 1237 (3d Cir. 1978). Prior to 1950, self-employed persons were not covered by Social Security because there was no agreement on a feasible method of obtaining reports of their income. See id. at 1238 (discussing legislative history). In 1950, Congress amended the Social Security Act to include self-employed workers because it determined that tax returns could be "an administratively feasible mode for determining the eligibility of self-employed claimants." Id. However, since "[r]eliance on income tax returns was regarded as the only workable plan . . . social security records may be corrected only by reference to a timely filed income tax return." Id. (citing 42 U.S.C. § 405(c)(4)(C), (c)(5)(F)). The Social Security Act treats wages and self-employment income differently because Congress did not want wage earners to be "penalized for the negligence of their employers" whereas "self-employed claimants control and are responsible for their own income tax and social security reporting." Id.

By statute, the Commissioner must "establish and maintain records of wages paid to, and the amounts of self-employment income derived by, each individual." 42 U.S.C. § 405(c)(2)(A). The term "year means a calendar year when used with respect to wages and a taxable year when used with respect to self-employment income." Id. § 405(c)(1)(A). "The term time limitation means a period of three years, three months and fifteen days." Id. § 405(c)(1)(B). The Commissioner's records are evidence for purposes of determining "the self-employment income derived" by an individual and the period in which such income was derived. Id. § 405(c)(3). "After the expiration of the time limitation following any year" in which self-employment income was derived by an individual, the Commissioner may change the self-employment income in the records "only" in certain enumerated situations. Id. § 405(c)(5).

Significantly, the statute authorizes the Commissioner to amend his records "to conform the Commissioner's records to (i) tax returns or portions thereof . . . except that no amount of self-employment income of an individual for any taxable year (if such return or statement was filed after the expiration of the time limitation following the taxable year) should be included in the Commissioner's records." Id. § 405(c)(5)(F). In other words, to have self-employment income included in an earnings record, a tax return must be filed within "three years, three

7

months, and fifteen days" of the taxable year's end. Id.

§ 405(c)(1)(B). The statute provides:

> The absence of an entry in the Commissioner's records as to the self-employment income . . . shall be <u>conclusive</u> . . . that no such alleged self-employment income was derived . . . unless it is shown that he filed a tax return of his self-employment income for such year <u>before the expiration</u> of the time limitation following such year.

Id. § 405(c)(4)(C) (emphasis added). In contrast, with respect to wages, the statute provides that, "the absence of an entry in the Commissioner's records as to the wages . . . shall be <u>presumptive</u> evidence . . . that no such alleged wages were paid." Id. § 405(c)(4)(B)(emphasis added).

Menapace filed his 2004 tax return on August 15, 2008, which was outside the statutory time limitation in section 405. The fact that the tax return was timely filed under the IRS extension does not trump the clear statutory time limitation. See id. § 405(c)(4)(C). "[C]ourts that have refused to change records after expiration of the three year, three month, fifteen day limitation have done so on the basis that there were <u>no</u> actual timely-filed tax returns." <u>Hollman v. Dep't of Health & Human Servs.</u>, 696 F.2d 13, 15 (2d Cir. 1982) (emphasis in original). SSA regulations explicitly state "[a]n extension by IRS of its time limitation does not affect SSA's time limitation." POMS RS 02201.025B.2.a; <u>see</u> <u>Bitsacos v. Barnhart</u>, 353 F. Supp. 2d 161, 168 (D. Mass. 2005) (acknowledging that

8

"the POMS do not have binding legal force, although courts frequently consider them when interpreting the SSA's statutory and regulatory policies"). Therefore, Menapace cannot rely on his 2004 tax return under section 405(c)(4)(C), simply because it was within the IRS extension.

The next question is whether there are any statutory exceptions that save the day for Menapace. In finding that Menapace had good cause for his untimely filing, the ALJ relied on 42 U.S.C. § 403(l), which provides:

> The failure of an individual to make any report required by subsection (g) or (h)(1)(A) of this section within the time prescribed therein shall not be regarded as such a failure if it is shown to the satisfaction of the Commissioner of Social Security that he had good cause for failing to make such report within such time.

Subsection (g) deals with penalties for failure to report certain events. It provides: "Any individual in receipt of benefits subject to deduction" because of the occurrence of certain specific occurrences must timely report such occurrences or "suffer deductions." Id. § 403(g). Subsection (h) requires an individual entitled to certain monthly insurance benefits to report earnings in excess of an exempt amount in a taxable year. Id. § 403(h)(1)(A).

The Commissioner argues that section 403, entitled "Reduction of Insurance Benefits," is not relevant to individuals seeking to amend their earnings record under section

9

405(c). The Appeals Council concluded that this "good cause" provision is inapplicable to correct an earnings report under section 405(c). See generally, 2A Social Security Law and Practice § 28:76 (2015) ("The failure of a claimant to make a timely report of earnings will not result in a penalty deduction if the claimant establishes to the satisfaction of the Social Security Administration that his or her failure to file a timely report was due to good cause.") (citing 42 U.S.C. § 403(l)).

Although cited by the ALJ, the claimant's reliance on Matta v. Sec'y of Health & Human Servs., 806 F.2d 287, 290 (1st Cir. 1986), is misplaced. In Matta, the First Circuit held that the Commissioner may require that claimants provide verification of self-employment income stated by a tax return and "determine what, if any, self-employment income the individual actually realized." Id. The tax returns at issue in Matta, however, were filed within the statutory time limitation. Id. at 289. With respect to erroneous self-employment income which is uncovered after the time limitation, as here, the First Circuit stated:

> As sub-section (4) indicates, prior to the expiration of the time limitation—and time limitation means 3 years, 3 months, and 15 days, 42 U.S.C. § 405(c)(1)(B)—the Secretary may correct errors in his records brought to his attention. If an erroneous omission of self-employment income in a particular year is not uncovered until after the time limitation expires, the Secretary's erroneous records will nevertheless be conclusive unless it is shown that a tax return was filed before the expiration of the time limitation following such year.

Id. at 290 (emphasis in original) (internal quotations omitted). This language undercuts the claimant's position. Therefore, the Appeals Council was correct in reversing the ALJ's decision because it was based on an incorrect conclusion of law.

   C. The Tax Return

On appeal, Menapace argues that the Appeals Council should be reversed because, along with the taxes he actually paid in 2005, he did, in fact, file a form that constituted a tax return under section 405 within the statutory time limitation. The Commissioner responds that the claimant has already admitted to filing his tax return outside of the statutory time limitation, and the only form in the record filed within the time limitation does not constitute a tax return under section 405. Menapace's argument was not raised before either the ALJ or the Appeals Council.

Plaintiff relies on the definition of tax return in 26 U.S.C. § 6103(b)(1) which states:

> Return: the term return means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, or on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists

>  which are supplemental to or part of, the return so filed.

(emphasis added). The SSA's Program Operating Manual System defines the term income tax return to mean a Form 1040. POMS RS 02201.018.

Although Menapace argues that he did make all estimated payments for calendar year 2004 in a timely manner, there is no evidence in the record that he filed the IRS Form 1040 ES or any worksheets used to calculate and pay tax obligations. "Tax regulations provide that a return of self-employment income is to be made on Form 1040 income tax returns, 26 C.F.R. § 1.6017-1, including a completed Schedule C or its equivalent." Chapman v. Apfel, 236 F.3d 480, 486 (9th Cir. 2000).

Despite the SSA's regulation requiring the Form 1040 for reporting self-employment income, courts have disagreed on whether informational returns like the Form 1099 can constitute a valid tax return under section 405(c)(4). Compare id. at 486 (holding "a timely filed tax return of self-employment income, not just 1099 forms, is required to overcome the otherwise conclusive presumption that the absence of an entry of self-employment earnings means that there were no such earnings"), and Hollman, 696 F.2d at 14 (finding a valid tax return must show "both [claimant's] gross self-employment income and his net after deduction of business-related expenses"), and Yoder v.

Harris, 650 F.2d 1170, 1174 (10th Cir. 1981) (holding that "information forms" like Form 1099 do not constitute tax returns or portions thereof because "they do not reflect expenses or losses, thus they fail to establish that [claimant] realized net self-employment income"), with Grigg v. Finch, 418 F.2d 661, 664 (6th Cir. 1969) (holding Form 1099 along with Form 1040's filed in subsequent years gave the SSA "actual or constructive notice of [claimant's] self-employment income"), and Hendrickson v. Sec'y of Health and Human Servs., 765 F.2d 747, 750 (8th Cir. 1985) (vacated by settlement in Hendrickson v. Sec'y of Health and Human Servs., 774 F.2d 1355 (8th Cir. 1985))(finding "Form 1099s . . . provided actual or constructive notice of [claimant's] self-employment income"). Despite this split, when evaluating whether a tax return meets the requirements of section 405, courts consistently look to whether the return or information statement communicates the net amount of self-employment income to the SSA.

In his brief, Menapace contends for the first time that "the uncontroverted evidence shows that the return the plaintiff filed on April 15, 2004 was a Form 1040 completed tax return." Docket No. 22 at 7. However, there is no evidence of a completed Form 1040 filed prior to August 15, 2008. Rather, the only form filed within the statutory time limitation in the record is the Form 4868, "Application for Automatic Extension of Time to File

13

U.S. Individual Income Tax Return." (R. 27). Additionally, the Commissioner points to multiple places in the record where Menapace admitted filing his 2004 tax return on August 15, 2008. See Plaintiff's Request for Reconsideration (R. 20); Plaintiff's Testimony at the ALJ Hearing (R. 76); ALJ Decision (R. 15).[2]

In his brief, Menapace also contends that, when he filed his application for extension and payment in 2005, he was required to complete and submit a worksheet showing his calculation of his estimated tax liability. However, the record does not contain any evidence of such a worksheet filed in 2005 or at any time. The record shows that on April 15, 2005, Menapace filed a Form 4868 "Application for Automatic Extension of Time to File U.S. Individual Income Tax Return" that included an estimated tax payment. (R. 27). This extension lists the total estimated tax liability, the amount paid during the year, and the payment included. The parties have cited no cases dealing with whether a Form 4868 constitutes a tax return under section 405, but this form contains even less information than the Form 1099 rejected by many circuits. It does not contain any information related to gross self-employment income, business expenses, or any of the basic information required to place the SSA on notice that the claimant had self-employment income.

---

[2] The certified mail receipt for the 2004 tax return in the record is illegible.

Therefore, deferring to the SSA's interpretation of its own statute, I conclude that this application for an extension, Form 4868, is not a tax return, or information statement, under the meaning of section 405. See Wash. State Dep't of Soc. and Health Servs. V. Guardianship Estate of Keffeler, 537 U.S. 371, 385-86 (2003).

In sum, the Appeals Council's findings that Menapace filed his 2004 tax return beyond the statutory time limitation, and that the only filing he made prior to August 15, 2008, does not constitute a tax return under section 405, are supported by substantial evidence. As no exception applies to allow Menapace to amend his earnings record beyond the time limitation, the Appeals Council correctly found that his earnings record should not include self-employment income for 2004.

   D. Equitable Tolling

Menapace argues that the time limitation should be equitably tolled because the IRS extension did not properly inform him of the possible consequences of the extension on his Social Security earnings record. The Commissioner responds that Congress made no provision for equitable tolling in section 405(c) and, therefore, the statute of limitations must be strictly adhered to by the court.

   "In order to read an implied equitable tolling provision into a statute that contains no such express provision, '[the

15

court] must determine whether equitable tolling is consistent with Congress's intent in enacting' the statutory scheme." Acierno v. Barnhart, 475 F.3d 77, 82 (2d Cir. 2007) (quoting Bowen v. City of New York, 476 U.S. 467, 480 (1986)). "The history illustrates that Congress . . . sought to limit the extent to which those [self-employment] records could be altered and likely would not have intended for equitable tolling to apply." Acierno, 475 F.3d at 81-82 (denying equitable tolling of time limitation based on legislative history and structure of section 405(c) for tax return filed nine months after the statutory time limit due to the mental illness of the claimant).

As the ALJ pointed out, not allowing Menapace to amend his record is a harsh result, because he did file a timely tax return, and paid timely taxes according to the IRS deadline. Menapace did not understand that a timely filing of his tax return would not suffice for SSA purposes. However, under these circumstances, the claimant's confusion, though understandable, is not enough to overcome the legislative intent of Congress to time-limit the amendment of self-employment records. To avoid such harsh results, the SSA should consider informing claimants with self-employment earnings that timely filed IRS returns will not always avoid the section 405(c) time limitations.

E. Fifth Amendment Violations

Menapace argues that the Commissioner's decision violates his Fifth Amendment rights because it would deprive him of property, in the form of forfeited self-employment taxes that he has paid, without just compensation. The Commissioner responds that Menapace has not suffered an unjust taking because he has no property right in his Social Security benefits based on an untimely filing. Menapace has not shown that he has a property right in his future Social Security payments such that exclusion of his 2004 self-employment taxes would constitute a taking in violation of his Fifth Amendment rights.

## ORDER

The Court **DENIES** Plaintiff's motion to reverse the Commissioner's decision (Docket No. 21), and **ALLOWS** Defendant's motion to affirm the Commissioner's decision (Docket No. 26).

/s/ PATTI B. SARIS  
Patti B. Saris  
Chief United States District Judge